UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRYAN A. JORDAN,
        *Plaintiff*,

        v.                                        No. 3:23-cv-0577 (VAB)

CORRECTIONAL OFFICER TREMBLAY
and CONNECTICUT DEPARTMENT OF
CORRECTIONS,
        *Defendant.*

## INITIAL REVIEW ORDER

Bryan Jordan ("Plaintiff") is a sentenced inmate in the custody of the Connecticut

Department of Correction ("DOC") at Brooklyn Correctional Institution ("Brooklyn").[1] He files

this Complaint under 42 U.S.C. § 1983 against Correction Officer Tremblay and DOC in

connection with his treatment while housed at MacDougall-Walker Correctional Institution

("MacDougall").

The Prison Litigation Reform Act requires that federal courts review complaints brought

by prisoners seeking relief against a governmental entity or officer or employee of a

governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint,

or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which

relief may be granted, or seeks monetary relief from a defendant who is immune from such

relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The Connecticut DOC website reflects that Mr. Jordan was sentenced on April 27, 2007. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=218810.

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein under 28 U.S.C. §1915A.

Following this review, the case shall proceed based on Mr. Jordan's individual capacity claims for damages against Officer Tremblay for violation of the Fourteenth Amendment's Equal Protection Clause. All other claims are **DISMISSED.**

## I.      FACTUAL BACKGROUND

Mr. Jordan allegedly worked at MacDougall as a gym employee in the gym office. Pl.'s Compl. ¶ 1, ECF No. 1 ("Compl."). On November 12, 2022, Officer Howard allegedly called him to report to the gym office. *Id.* ¶ 2. Shortly after he arrived, Mr. Jordan allegedly counted the equipment and indicated a readiness to provide equipment to the inmates for morning recreation. *Id.* ¶ 3. Thereafter, Officer Tremblay, a white woman, allegedly walked into the gym office and ordered Mr. Jordan to move from where he was sitting. *Id.* ¶ 4. Mr. Jordan allegedly questioned why he needed to move and reached over to offer her with a seat. She allegedly did not accept that offer, and yelled at Mr. Jordan to move from his seat. *Id.* ¶ 7.

Officer Howard allegedly failed to intervene on his behalf, and the interaction with Officer Tremblay escalated. *Id.* ¶ 8. She allegedly continued to yell at him; and after he rose from his seat and walked out of the office, both Officer Tremblay and Officer Howard allegedly followed him. Officer Tremblay allegedly yelled at him: "Your black ass is going to learn to listen." *Id.* ¶ 20. Mr. Jordan allegedly responded that her comment was extremely racist, unprofessional, and unnecessary. *Id.* ¶ 22. He allegedly requested that a supervisor be called, but Officer Tremblay refused to do so. *Id.* ¶ 23.

Later, Mr. Jordan allegedly asked his Block Officer to call a lieutenant in order to report Officer Tremblay's remarks. *Id.* ¶ 24. Mr. Jordan allegedly was sent to the lieutenant's office, where he met with three lieutenants. *Id.* ¶ 25–26. Lieutenant D'Aquila stated that he would speak to Officer Tremblay about her comments, and that DOC does not tolerate racism on any level. *Id.* ¶ 28.

After Lieutenant D'Aquila allegedly reported that Officer Tremblay claimed that he was not supposed to be in the gym office, Mr. Jordan allegedly asked for a written report to be filed about the incident. Lieutenant D'Aquila allegedly told him to file a grievance. *Id.* ¶ 32.

Mr. Jordan alleges that he later learned from another inmate, who is white, that Officer Tremblay had requested that he do Mr. Jordan's job whenever she was present. *Id.* ¶ 29. Officer Tremblay allegedly replaced Mr. Jordan with an inmate who is white. *Id.* ¶ 33.

Mr. Jordan allegedly wrote to his supervisor, unit manager, and deputy warden about the incident. *Id.* ¶ 34. Allegedly, only Deputy Warden Johnson promised to look into the incident. *Id.* ¶ 35.

Mr. Jordan alleges that he exhausted his administrative remedies before filing this Complaint. *Id.* ¶ 38.

## II.      DISCUSSION

Mr. Jordan's Complaint seeks relief under 42 U.S.C. § 1983 against DOC and MacDougall Correction Officer Tremblay. As an initial matter, he cannot assert a plausible claim brought under Section 1983 against a state agency, such as DOC. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989) (state and state agencies not persons within meaning of 42 U.S.C. § 1983).

As Mr. Jordan does not specify any request for relief, the Court construes his Complaint as asserting damages claims against Correction Officer Tremblay in her individual capacity. A plaintiff seeking monetary damages must allege facts that establish the personal involvement of a defendant in the alleged constitutional violation, *see Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (explaining that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983") (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir.1991)), including supervisory officials. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) ("To hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability.").

As for specific claims, Mr. Jordan's Complaint is best construed as raising a claim for unconstitutional conditions of confinement under the Eighth Amendment, and for loss of his prison job and racially motivated disparate treatment under the Fourteenth Amendment.

**A.      The Eighth Amendment Unconstitutional Condition of Confinement Claim**

To state a cognizable Eighth Amendment claim for unconstitutional conditions of confinement, a plaintiff must allege facts to show that (1) objectively, "the deprivation was sufficiently serious that he was denied the minimal civilized levels of life's necessities," and (2) subjectively, that the defendants "acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (summary order) (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks omitted)); s*ee DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989) (listing food, clothing, shelter, medical care, and reasonable safety as

4

examples of basic human needs). In the Eighth Amendment context, courts have generally

required that the inmate allege that some harm of "appreciable injury" from any conduct

allegedly rising to the level of a constitutional violation. *See Willey v. Kirkpatrick*, 801 F.3d 51,

70 (2d Cir. 2015) (instructing district court to consider whether plaintiff's "psychological pain"

and subsequent suicide attempt caused by non-physical sexual harassment constituted an

"appreciable injury" that was actionable); *see also Burns v. Martuscello*, 890 F.3d 77, 91 (2d Cir.

2018) ("[A] number of courts have found an Eighth Amendment violation where a guard

publicly labels an inmate as a snitch, because of the likelihood that the inmate will suffer great

violence at the hands of fellow prisoners.").

Here, Mr. Jordan has not alleged facts to suggest that he sustained any appreciable harm

from Officer Tremblay's alleged verbal harassment or that it exposed him to danger. Thus, the

alleged limited or isolated instances of verbal harassment by Officer Tremblay do not give rise to

an Eighth Amendment violation. *See Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997)

(noting limited instances of verbal harassment does not "involve harm of federal constitutional

proportions"); *Cuoco v. Moritsugu,* 222 F.3d 99, 109 (2d Cir. 2000) (noting that "rudeness and

name-calling does not rise to the level of a constitutional violation"); *Green v. Franco*, No.

3:22CV129 (MPS), 2022 WL 1033243, at *6 (D. Conn. Apr. 6, 2022) (noting verbal harassment

and threats do not alone rise to the level of a constitutional violation).

Accordingly, Mr. Jordan has not stated a plausible Eighth Amendment claim, and that

claim will be dismissed.

B.      **The Loss of Prison Job Claim**

The Court next considers whether Mr. Jordan's loss of his prison job violates the

Fourteenth Amendment.

1.      **A Fourteenth Amendment Due Process Claim**

For a procedural due process claim a court "first ask[s] whether there exists a liberty or

property interest of which a person has been deprived, and if so . . . whether the procedures

followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219

(2011) (per curiam). Inmates have no constitutionally protected liberty or property interest in

their job assignment. *See Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) (holding that there is

no constitutional right to a job without underlying state law mandating jobs for prisoners);

*Burton v. Salerno*, No. 3:20-CV-1926 (VAB), 2021 WL 3493621, at *10 (D. Conn. Aug. 9,

2021) (dismissing as not plausible due process claim based inmate's employment dismissal

because inmate had "no liberty or property interest in his prison job").

Accordingly, Mr. Jordan has not stated a plausible Fourteenth Amendment due process

claim with respect to his alleged job loss.

2.      **A Fourteenth Amendment Equal Protection Claim**

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall

"deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend.

XIV. It does not mandate identical treatment for each individual or group of individuals. Instead,

it requires that similarly situated persons be treated the same. *See City of Cleburne v. Cleburne*

*Living Ctr.*, 473 U.S. 432, 439-40 (1985). To state a plausible equal protection claim, a plaintiff

must allege facts showing that: (1) he was treated differently from similarly situated individuals

and (2) that the difference in or discriminatory treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).

In addition, a plaintiff may also state a violation of the Equal Protection Clause under the "class of one" theory. To state a valid class-of-one claim, a plaintiff must allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In the Second Circuit, a plausible class of one claim requires a plaintiff to "show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted).

For initial pleading purposes, Mr. Jordan has sufficiently alleged equal protection violations under theories of class-based racial disparate treatment and a "class one."

Accordingly, Mr. Jordan may proceed on his damages claims for Fourteenth Amendment equal protection violation against Officer Tremblay in her individual capacity.

**III.    Orders**

The Court enters the following orders:

(1) The case shall proceed on Mr. Jordan's individual capacity claims for damages against Officer Tremblay for violation of the Fourteenth Amendment's Equal Protection Clause. All other claims are **DISMISSED**. The Clerk of Court is respectfully instructed to terminate the Department of Correction as a Defendant in this case.

(2) The Clerk of Court shall verify the current work addresses for Correction Officer

Tremblay with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint and attachments to her at her confirmed addresses by **August 11, 2023**, and report on the status of the waiver request by **August 25, 2023**. If the Defendant fails to return the waiver request, the Clerk of Court shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on Defendant, and Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk of Court shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(4) Defendant shall file a response to the Complaint, either an Answer or motion to dismiss, by **November 3, 2023**. If Defendant chooses to file an Answer, Defendant shall admit or deny the allegations and respond to the cognizable claims recited above. The Defendant may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed by **March 8, 2024**. Discovery requests need not be filed with the court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed by **April 12, 2024**.

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Mr. Jordan changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. He must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If he has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendant or defense counsel of his new address.

(10) Mr. Jordan shall utilize the Prisoner E-filing Program when filing documents with the court. He is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on Defendant's counsel by regular mail.

**SO ORDERED** at Bridgeport, Connecticut, this 21st day of July, 2023.


/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE